Harbert v. State 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-089-CR

     CECIL HARBERT,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 92-17-C
                                                                                                    

O P I N I O N
                                                                                                    

      Cecil Harbert appeals his conviction for aggravated assault. Harbert was found guilty by a
jury, and, as a result of two prior convictions that enhanced the range of punishment, the jury
assessed punishment at fifty-five years in prison.
      In point one, Harbert contends that the evidence is insufficient to support the conviction
because a rational trier of fact would not have found against him on the self-defense issue. In
resolving the sufficiency-of-the-evidence issue, we look not to whether the State presented
evidence that refuted Harbert's self-defense testimony, but instead, we determine whether, after
viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt and also could
have found against Harbert on the self-defense issue beyond a reasonable doubt.


 Harbert does
not contend that the verdict is so against the great weight and preponderance of the evidence as
to be manifestly unjust.



      James Conyers testified that at approximately two o'clock in the afternoon on August 5, 1991,
he was standing outside a store on 15th and Colcord streets in Waco. According to Conyers, he
was gossiping with Victor Hicks and James McVey. Conyers testified that he was standing against
a fence, facing the street, when he heard someone say, "What's up now?" He turned around and
saw Harbert standing on the other side of the fence. Conyers testified that he "turned and started
running toward the store trying to make it to the door" when Harbert pulled out two pistols. As
Conyers was running, he heard shots and felt one bullet hit his right leg. Another bullet hit his
left leg, breaking his leg, and causing him to fall to the ground. Conyers then hopped into the
store and hid behind the counter. He testified that he did not have a gun and was not in the habit
of carrying a gun.
      Conyers had been in a fight with Harbert on the previous night. Responding to rumors that
Harbert had been looking for him with a gun, Conyers approached Harbert and said, "I heard you
had been looking for me." Harbert denied that he had been looking for Conyers, and Conyers
turned to walk off. According to Conyers, when he heard Harbert say something else, he turned
around and walked up to Harbert. Conyers claimed that, because he did not know whether
Harbert was going to swing at him, he swung at Harbert first. Conyers struck Harbert in the
mouth, knocking him to the ground. Conyers testified that Harbert said, "I'm looking for you
now," before getting in his car and driving off.
      Although Harbert testified that he only had one gun when he confronted Conyers at the store
and that Conyers fired the first shot, the jury is the sole judge of the weight and credibility of the
witnesses and may believe or disbelieve all or any part of any witness' testimony.


 The issue of
self-defense is a question of fact to be determined by the jury.


 On the basis of these facts,
viewing all the evidence in the light most favorable to the prosecution, we hold that a rational jury
could have found beyond a reasonable doubt against Harbert on the self-defense issue. Because
the evidence is sufficient to support the conviction, we overrule point of error one.
      In point two, Harbert contends that the court erred in admitting evidence of the State's
inability to produce Victor Hicks and James McVey as witnesses. Allen Lewis, an investigator
with the McLennan County District Attorney's Office, testified that he had been looking for Hicks
and McVey since March 31, 1992. Although Hicks finally returned a call from a pay phone and
agreed to come in on April 7, Lewis had been unable to personally serve either witness with the
subpoenas. According to Lewis, the subpoenas were issued by the district clerk's office on April
6, the first day of the trial. Lewis did not speculate or imply what the testimony of either witness
would have been, and no evidence was admitted against Harbert through the statements of the
unavailable witnesses. As a result, Harbert was not denied the right of confrontation.


 
      Furthermore, Harbert does not complain that the State's failure to exercise due diligence in
a good faith attempt to secure service of process denied him the right to compulsory process.


 
Nowhere does the record reflect that Harbert attempted to compel the presence of Hicks and
McVey at trial by timely requesting a subpoena. 
      Because Conyers had previously testified that Hicks and McVey were with him at the store
when he was confronted by Harbert, Hicks and McVey were material witnesses, and the court
acted properly in allowing the State to explain its failure to produce them as witnesses.


 We
overrule point of error two.
      In point three, Harbert contends that the court erred in denying his motion for mistrial because
of the improper argument made by the prosecutor during the guilt-innocence phase of the trial. 
During closing argument, the prosecutor made the following comments:
I want to talk about the witnesses who aren't here. I think it's reasonable to infer
that maybe they were just flat scared to come up and testify. I mean, if somebody—
 
[Defense Attorney]: Objection, Your Honor, totally outside the record.
 
[Prosecutor]: It's reasonable—
 
THE COURT: Sustain the objection. I'll instruct the jury they'll disregard the last
statement for any purpose whatsoever.
 
[Defense Attorney]: We move for a mistrial, Your Honor.
 
THE COURT: Overrule the motion for mistrial.
 
[Prosecutor]: We made an effort to get ahold of the witnesses. For whatever reason,
we don't have them.
Proper jury argument falls within one of the following categories: (1) a summary of the evidence;
(2) a reasonable deduction from the evidence; (3) an answer to the opponent's argument; or (4)
a plea for law enforcement.


 All other arguments are improper. Harbert's attorney made the
following references to the missing witnesses during his final argument:
. . . let me talk a little bit about who didn't testify. I think it's very important. We
didn't hear from James McVey. We did not hear from Victor Hicks. . . . They're eye
witnesses, they're friends of "C". Let's assume that everybody is like "C" says, and he's
just standing there minding his own business, and a guy comes up with two guns, and
starts shooting him. . . . if they're such good friends, and they don't have anything to
hide, and they're so truthful, why didn't they come up here to testify? The DA gets their
investigator to say, "Well, we subponeaed [sic] them yesterday, and we couldn't find one
of them. We were looking for them for a week, and we couldn't find them." If they're
friends of "Cs", they could have been found. And I'm sorry that they didn't look for
them sooner, but they could have, but why didn't they want to come in here and testify? 
They weren't cooperative. They talked to one of them on the telephone, said, "We want
you to come down here and testify."

Although the prosecutor was entitled to answer the arguments of Harbert's attorney, for a
prosecutor to argue outside the record and inject personal opinion is improper.


 Therefore, the
court properly sustained Harbert's objection to the prosecutor's suggestion that the missing
witnesses were afraid to testify. When, however, the court instructs the jury to disregard the
improper argument but denies the defendant's motion for mistrial, error results only when the
argument is extreme, manifestly improper, injected new and harmful facts into the case, or
violated a mandatory statutory provision and was thus so inflammatory that its prejudicial effect
could not reasonably be removed from the minds of the jury by the instruction given.


 Based on
our examination of the arguments in light of the entire record, we hold that the prejudicial effect
of the improper comment and argument was removed from the minds of the jurors by the court's
instructions to disregard the remarks, and thus, no error occurred in denying the motion for
mistrial.


 We overrule point of error three.
      We affirm the judgment.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed February 3, 1993
Do not publish